As previously announced, the times will be as allotted to counsel. The first case today is 15-13-16, United States v. Richard Magee. Thank you. Mr. Andrew, good morning. Good morning, Judge Toretto, Judge Lynch, Judge Barone. May I reserve two minutes at the end of my argument? You may. Your Honor, the district court in this case used five pieces of evidence to explain why the false impression left in the affidavit that justified a search warrant was not material. Those five factors were the agent's interpretation of the telephone calls that were intercepted, the interaction between targets of the investigation. I request that one of the targets wait for the person who worked for Mr. Magee, an agent's observation of what happened when Mr. Magee met up with one of the targets, and the later discovery of cocaine in the automobile that Mr. Magee was observed interacting with. This court must analyze probable cause under a totality of the circumstances analysis. Typically, when a Frank's motion is filed, materiality would mean that without the challenged information, there was no probable cause within the four corners of the affidavit. And that, Your Honor, is what I'm here to discuss today. The four corners of that affidavit and the materiality of the information that was challenged. I am, again, as in a previous case, asking this court to adopt the holding of United States v. McMurtry. It says that there shouldn't be this supplemental information provided to the government where it gets an opportunity to explain why the challenged information is not material. Because that is, in fact, what happened here. Now, of those five factors, the only ones that were not from the supplemental part were the fact that the discovery of the cocaine and the interpretation of the telephone calls. My suggestion here is that the interpretation of the telephone calls and the discovery of the cocaine are really nothing more than bold assertions that the Supreme Court has said wouldn't by themselves make probable cause. And because of that, the remaining factors which were presented after the fact, after the information was challenged, does not support the finding of probable cause in this case. Particularly, the substance of the intercepts were influenced by what was stale information by that time. A historical reference to Mr. McGee and a controlled buy. And, of course, what was found in the car. The problem is that there is no real connection between the cocaine that was found in the car and the interaction between Mr. McGee. While there is an interpretation of a telephone call that suggested that he had more cocaine in his home, according to the agent, that by itself shouldn't meet the probable cause standard. Nor should it be corroborated by what is really just social interaction between a group of people. In this case, Mr. McGee challenged, and the court found, that there was a false impression left. And that that false impression was that Mr. McGee left the cocaine in the car. And that is what makes this case the kind of case where Frank's motion, it should have been enough to have said, well, it left the false impression. That's an omission. And while it's not a lie in the affirmative sense, it did create the false impression. And that the court was believed or found that that false impression would have had an effect if it weren't for the new information. Was any of the information in the wiretaps contained in the affidavit? It was, Your Honor. And why isn't that enough? Well, because the interpretation, it would be different if they were saying or having an explicit conversation about drugs versus a coded conversation about drugs. And in this case, the language wasn't direct references to drugs. It was references to other things that could have been drugs. Aren't there some wiretaps that indicate that your client said that he had drugs stashed in his house? There is that information. Although even those aren't particular to, well, there's certainly no word for drug use. And there was certainly no specific reference to cocaine. And now there is a colloquial sort of word that they use. I don't think that that's enough. And the reason I think... Wait a minute. My question is, is there a wiretap in which, I think two, in which your client indicates that he has drugs stashed in his house? Well, the word that he used in the room that they were stashing the house was, I have better shit at my house. And that is what is being interpreted. But the context of the telephone call is really just something that the agents, while they're listening to, decide it's drug-related and then determine that they're talking about drugs. And I understand this coarse notion. But that interpretation by itself isn't enough. We know that because of what happened when the prior standard used Aguilera or Nathanson. It wasn't enough for the officer to say, I believe this person has evidence of a crime. And that's the bald assertion that I'm talking about. Was that a case interpreting language between two people accused of, that are said to have been involved in drugs? No. So what's the relevance of that case? Because the question here is whether it's enough, given a coded conversation, for the law enforcement to say the most plausible interpretation of what they're talking about is a drug transaction. Do you have a case saying that that's impermissible? No, I don't, Your Honor. OK. But what I'm trying to get the court to adopt is that these interpretations, it's a lessening of the standard because then it just becomes, we say that there are drugs. And that's really no difference then. Counsel, there's more than the wiretap information, isn't there? That is, from the wiretap, you learn that there are certain meetings that are going to take place, that somebody's to go to McGee's house while somebody is supposed to wait outside Ruski's, the bar. And in fact, those observations were made and that reinforced the accuracy of what was being said. And my problem with that, Judge Lynch, is that that is an explanation that was offered after the finding that the real impression that justified probable cause in this case was that Mr. McGee left drugs in the car. And when that was pointed out to the government that that was incorrect, the government was then allowed to supplement that information with the very information that you were discussing about having the media. Actually, I thought the judge below found that it wasn't inaccurate. It simply left a possibly misleading impression that there was nothing inaccurate about what was actually said. But there was an omission of one other fact that might have helped clear up any misimpression. Wasn't that the record? I think that the record is a little bit different than that in that it doesn't clear it up. I think that what the judge says is that it did leave the false impression that the cocaine was left in the car by McGee. What he says is that I don't find the agent's assertion that he saw Mr. McGee interact with the car to be false. I think that there's a distinction there. I think the distinction is this isn't a case of an outright affirmative lie. This is an omission. And that omission was that the package that Mr. McGee was seen carrying during that interaction was actually left inside the restaurant with the owner. And that was also witnessed by other agents and that was similarly left out. And it's at the core of those challenges, Your Honor, that we ask this court to demand and suggest that there be a Frank's hearing in this case where we're allowed to challenge probable cause in a full evidentiary hearing. I wanted to ask just one question about the drug quantity issue. I forget the call name. Is it call 3859 or something? You know what I'm talking about. There's a reference to a call. Well, I think the drug quantity issue from our perspective is about whether— No, I understand that. There's a reference in the record to a call 3859. Is that right? Do I have the number right? Yeah. I'm not sure, Your Honor. Okay. Well, there is a reference to a call that I was in the district court relied on in making the finding of drug quantity in addition to the evidence concerning Paul. And you don't challenge anything about whether that call supplies a basis for the drug quantity. Is that right? Well, but I— You do or you don't? I don't, Your Honor. Okay. So if that's the case, why hasn't that been sufficient to provide a basis for the drug quantity? Because drug quantity has to be substantially similar conduct in this case. And because they're so remote in time— No, no. But the call relates to things that are remote in time, and that relates to the dealings with Gerald as opposed to Paul, I thought. Right. And then the dealings with Gerald are not our problem. The dealings with Paul are our problem. But if there's enough evidence in that call of drug quantity in the dealings with Gerald, why isn't that enough to support the drug quantity finding? I understand what you're asking, Your Honor. And our issue with respect to that is that it is enough. Our other problem is that the extension of including the Paul stuff also includes criminal history points that we believe should be excluded. That's our issue with Paul. And we can't attribute the criminal history points from what was said in the call? That's correct. Okay. Although I have my brief for my other arguments. Thank you. Do you have your two minutes, sir? We've already used four, but— Yes, Your Honor. Thank you. Good morning. Good morning. I'm Margaret McGoy for the United States. I would like to begin with the Franks issue and then turn to Judge Barron's question about the drug quantity issue. With respect to the Franks issue, if I could start by putting the issue in perspective, there were two purported omissions from the affidavit. One was that there was an officer who we learned through Mercer's trial had been inside the bar and had seen McGee hand something to the bartender in the bar before he went back outside to deal with McGee. I'm sorry, with Mercer. And then the second one was that the informant in one of the 2011 transactions had died. The death of the informant in 2011 had absolutely no impact on the probable cause at all because the officers saw that transaction take place and the affidavit represented that the informant gave them the drugs. So there was no—to the extent it was omitted, it was not material. With respect to the observations inside of the bar, there were supplemental affidavits on the part of the agent who was inside who saw the defendant hand the package to the bartender and also the transcript of the testimony at the other defendant's suppression hearing about what took place outside. The defendant never objected to those supplemental affidavits. So in our view, he has waived any complaint with respect to reliance on them. But the bottom line is that even if you put in the information that was learned as a result of the defendant's complaint, there's absolutely overwhelming probable cause to search. And I might start with the recorded phone calls to which you referred, Judge Torawaya. Burke described conversations on September 11th, 19th, and 20th in which the defendant was recorded talking about bettership, killership, that other stuff. The agent specifically said that relying on his experience, he interpreted that to be a code reference to cocaine. This court has very recently said that officers may rely on their experience in interpreting facts that might otherwise make no sense to the untrained eye. To answer your question, Judge Torawaya, about whether there were references that the drugs were at the defendant's home, there were two of them. One was in the September 19th call, and the second was in the September 27th call. There were, as Judge Lynch pointed out, observations that corroborated that the transactions that were being discussed in the recorded calls were in fact drug transactions. The agents followed Jones, whom they knew had participated in a drug transaction with the defendant, to the defendant's home on September 20th. He went inside. He then came out. The defendant then went to Rusky's, which was a place where the officers knew drug transactions had taken place in the past. They then stopped Mercer's car. They found two ounces of cocaine, direct relationship between the recorded call and the seizure of the drugs. But then later, there are a series of calls, and I would like most significantly to focus on the call on September 23rd, which is recounted in the affidavit. In that call, the defendant is recorded discussing with Jones the fact that his friend just got busted with two O's on him. Well, that is a very clear reference to Mercer having been arrested three days earlier with two ounces of cocaine, and we know it's Mercer, because they discuss the fact of getting bond for chemical Craig, and Mercer's first name is Craig. But beyond that, there's a September 27th call in which Jones and the defendant are recorded, the defendant saying he's about to go down to his source to get the normal thing, that it will be stored not on his person, but in his home, to answer your question, Judge Torreya. They talked about meeting in Biddeford, but there was a balking about that because of the stuff that I'm carrying, which is a clear reference to cocaine. So in the government's view, and that's just a summary of what the affidavit provides, it provided abundant, overflowing probable cause, notwithstanding what were very minor omissions from the affidavit. If the court has further questions about that, I will happily answer them, but I would like to turn to Judge Barron's question. We need to start, the court is of course familiar with the standard of review that applies to drug quantities and what is common course of action. There were several amounts that could have been imputed into the drug quantity that were not. Among them were the cash that was found at the defendant's basement, which could have been converted to a drug equivalent. It was not. There was a small amount of methamphetamine that was found in the defendant's basement. Tiny amounts of methamphetamine can boost a defendant's drug quantity significantly. But to answer your question, Judge Barron, all by itself, that recorded call established a drug quantity within the 500 to 2,000 grams of cocaine that Base Offense Level 24 establishes. But you chose not to charge them. Is there a reason for that? And I am very happy that you are raising that issue, Judge Torway, because I am quite familiar that you are the author of an opinion that disapproves of the use of relevant conduct. And I would like to put you at ease, if I can, by telling you that this is not a situation in which the sentencing judge relied only on a pre-sentence report and the corroboration that was contained in that pre-sentence report. In this case, there was effectively a bench trial on the issue of drug quantity. The sentencing court in this case had presided over Mercer's trial, which resulted in a guilty verdict, at which Jones testified under a plea agreement. There was a stipulation with respect to the amount of drugs that was found on Mercer. There could have been no question that the 29 grams found at the defendant's house belonged to him. The defendant conceded that 70 grams from Jones could be attributed to him. But the court had before it 10 of the 500 recorded calls starting in 2011, including call number 3869, about which you inquired, Judge Barron. The court had Paul's sentencing testimony, at which the court had an observation to make a credibility judgment about Paul itself. The court had Proleman's grand jury testimony, the transcript of it. It heard Proleman testify. It had a copy of Wolf's report. It had Clancy's testimony, again, the credibility of which it could evaluate with respect to the 2011 transaction involving the dead informant. And finally, the court had Buchanan's testimony about the cause. So this is not a case where anybody was slipshod relying on unreliable facts. The court has ample confidence. This is not really the issue as far as I'm concerned. The issue is that you had all this evidence. You chose not to charge it. If you had charged it, the burden of proof would have been beyond a reasonable doubt. Furthermore, the defendant would have been in a better position to decide whether to plead guilty because he was pleading guilty to over $500,000 rather than $150,000, which is all he pled to. Well, you bring me to another point, Judge Torrella, which was that there was a plea agreement in this case. And the plea agreement called for the defendant to plead guilty to four drug counts in exchange for the dismissal of two other drug counts. Now, I understand your concern, Judge Torrella, but there are two competing factors here. One is that it is, in fact, in the administration of justice, the interests of that administration, to have defendants plead guilty when the evidence is overwhelming. But in correlation with that is the guidelines provision that the sentencing should be based on a real offense conduct and not on charged offense conduct. And in the government's view, whatever happened in other cases,  because the plea agreement provided for a plea to some charges but not others, and then there was, as I say, in effect, a bench trial with respect to drug quantity. The third point, which I understand the court may have reservations about, is that it remains the law of this circuit that drug quantities can be found by the sentencing judge by a preponderance of the evidence. Can I just ask you about that 3869 Paul? Sure. And just so I understand whether it makes some of the arguments that the defendant's making somewhat beside the point. The brief of the defendant focuses on a question of whether the Paul evidence can be said to be relevant conduct because there's too many dissimilarities. Right. The brief does not challenge the apparent finding by the district court that the call 3869 independently or on its own provides a basis for thinking that there was this higher quantity. Correct. That call relates to something other than the Paul testimony. Is that right? That relates to the Jones. That call was one of the charged communication counts. Okay. It was on August 23rd. So as the case comes to us, there's just no argument advanced to us, if I understand it right, as to why the evidence supplied by that call supplied an impermissible basis for concluding the drug quality is as high as the district court found it to be. Is that right? I do not understand the defendant's brief to challenge that, and I certainly have asserted in my brief that it was one of two independent ways that the court could get beyond the 500-gram threshold. Okay. And the last point, the defendant made the argument when they argued just now that somehow the criminal history points are added only in consequence of the Paul testimony and not the call. Is that correct? Yes, and I confess that I did not understand that question, but I can answer the question with respect to the criminal history category. Do you understand the question or the answer? The argumentation by the defendant? I hope I can answer the court's concern about the criminal history category point. And the basis for challenging that was that criminal history category points were attributed on the basis of conduct that was over 15 years old, which is what the guidelines, the cutoff point. But the conduct in that case was in 2006. There was one relevant conduct charged offense in 2011 with a dead informant. The defendant was convicted in 2006, and the court specifically found that there was a well-established criminal venture in place in 2013. But even if you go 2006 to 2014, it's within the 15 years. So that had nothing to do with whether it was similar or not. That's just a matter of how old it was. That's right. That's how I understood his argument today. Thank you. If the court has further questions, I'd be happy to answer them. Otherwise, the government will urge the court to affirm. Thank you.